16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony BUSTOS and Alfredo Garcia, Defendants-Appellants.
 Nos. 93-1203, 93-1204.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1994.
 
 Before: GUY and SILER, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Anthony Bustos appeals his conviction and sentence for conspiracy and falsifying government documents. Defendant Alfredo Garcia appeals his conviction of conspiracy and of transferring a false identification document. They allege the following errors: (1) admission of a conversation between Garcia's wife, Carlota, and Carmen Almanza; (2) failure of the court to admonish the jury; (3) insufficiency of the evidence against Garcia; (4) enhancement of the sentencing of Bustos because of his leadership role; and (5) improper cross-examination of Garcia's daughter, Lidia. For reasons stated herein, we AFFIRM.
 
 Background
 
 2
 This case centers around a Plainwell, Michigan meat packing plant known as Murco, Inc. Bustos and Andres Jubay ran Murco's personnel department and hired workers known by them to be undocumented aliens from Mexico. This practice was intended to produce a steady work force and relieve Murco's rising health care costs. This illegal work force was provided by Garcia and his daughter, Lidia, who, for a fee, brought Mexican citizens illegally into the United States, housed and transported them, and obtained work for them at Murco.
 
 
 3
 On January 15, 1992, officials from the Immigration and Naturalization Service (INS) executed a search warrant at Murco, arresting 175 workers for being undocumented aliens and seizing Murco's employment records. An investigation of these records revealed that roughly one-third of Murco's employees were undocumented aliens. Three individuals who worked for Bustos testified that they had brought Bustos phony documents submitted by Murco applicants and had been told that the documents were to be accepted no matter how counterfeit they appeared to be.
 
 
 4
 The INS observed five vans leaving property owned by Garcia each day carrying approximately twenty Hispanic employees in each van being transported to Murco. When these vans were stopped, all but four occupants were undocumented aliens. Upon reviewing Murco's records, the INS discovered that thirty-eight undocumented workers gave their address as 1957 57th Street, Fennville, Michigan, which was Garcia's home. Workers at Murco also testified that Garcia was known to be a person who, for a price, would transport Mexicans illegally into the United States.
 
 I.
 
 5
 At trial, the court allowed the introduction into evidence of an audio tape of a conversation between Carlota Garcia and Carmen Almanza. The defendants objected to the use of this tape and argued that it should not be admitted as a coconspirator statement according to Fed.R. of Evid. 801(d)(2)(E). The defendants raised the question of whether Carlota Garcia was a member of the conspiracy as required by this rule. To be reversed on appeal, the district court's finding that Carlota Garcia's statements were admissible under Rule 801(d)(2)(E) must be clearly erroneous. Bourjaily v. United States, 483 U.S. 171, 181 (1987).
 
 
 6
 In order to admit a statement under Rule 801(d)(2)(E), the district court must be satisfied (1) that a conspiracy existed; (2) that the defendant against whom the hearsay is offered was a member of that conspiracy; and (3) that the challenged statement was made in the course of, and in furtherance of, the conspiracy. United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989). Once a conspiracy is established, only slight evidence is necessary to link a particular person to it. See United States v. Lee, 991 F.2d 343, 348 (6th Cir.1993).
 
 
 7
 There is no problem with the first two criteria. Both Garcia and Bustos were members of a conspiracy to transport, harbor and employ undocumented aliens at Murco, and to falsify government documents relating to their legal ability to work in the United States. Garcia and Bustos argue, however, that the government failed to produce any independent non-hearsay evidence linking Carlota Garcia to the charged conspiracy. Nevertheless, as conceded by defendants, the court may consider the contents of the hearsay statement to determine admissibility. See Bourjaily, 483 U.S. at 177-78.
 
 
 8
 The conversation in question took place between Carlota Garcia and a government informant named Carmen Almanza. When Almanza called, he asked to speak with Alfredo Garcia but, since he was not home, spoke with Carlota. When asked how much her husband would charge to take Almanza to Mexico and arrange for his return, Carlota responded that she thought that "it's over a thousand." Also, Carlota suggested that Almanza convince some friends to come into the United States with him to make the trip worthwhile.
 
 
 9
 Trial testimony also indicated that over twenty-five Murco employees lived in the residence and in a trailer parked in the back yard of Alfredo and Carlota Garcia. Further, the INS agents discovered as many as thirty-eight undocumented aliens had given Carlota's home as their address.
 
 
 10
 The decision of the district court admitting that evidence was not clearly erroneous. Sufficient evidence existed to connect Carlota Garcia to the illegal activities at issue here. She acted in furtherance of the conspiracy during her conversation with Almanza by providing a price of illegal transportation into the United States.
 
 II.
 
 11
 The defendants appeal the decision of the district court not to caution the jury that the testimony of Dalia Sanchez, who was subject to a plea agreement which could be revoked if she did not testify truthfully, should not be given undue weight because of that agreement.
 
 
 12
 Reversal for failure to give a requested instruction occurs only when three circumstances arise: (1) the requested instruction was correct; (2) it was not substantially addressed by instructions given by the court; and (3) the instruction was so important that the failure to give it impaired the defense. United States v. Sassak, 881 F.2d 276, 279 (6th Cir.1989).
 
 
 13
 Sanchez testified about her guilty plea to hiring undocumented workers at Murco. Her plea agreement was not entered into evidence. However, copies of the agreement were originally placed in the jurors' notebooks but were removed prior to deliberations. The court later cautioned the jury to examine Sanchez's testimony with "greater care and caution than the testimony of an ordinary witness," because she was an alleged accomplice and was seeking personal advantage by testifying.
 
 
 14
 Under Sassak, the instruction given by the district court was sufficient. That instruction addressed defendant's concern of jurors giving Sanchez's testimony undue weight. Further, the point addressed by the proposed instruction, the credibility of one witness, cannot be said to impair the defense. Thus, the district court did not err by refusing to give the proposed instruction.
 
 III.
 
 15
 Defendant Garcia argues that there was insufficient evidence to convict him of conspiring with his co-defendants in the charged offenses.
 
 
 16
 Defense counsel moved, pursuant to Fed.R.Crim.P. 29, for a judgment of acquittal at the conclusion of the government's case. However, he failed to renew his motion at the end of all the evidence. Absent a manifest miscarriage of justice, this court is "unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of all the evidence." United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984) (emphasis in original).
 
 
 17
 The elements of a conspiracy are: (1) a conspiracy existed in the manner and during the time alleged in the indictment; (2) the defendant willfully became a member; (3) one of the co-conspirators committed at least one overt act, as alleged; and (4) the overt act was performed to further the conspiracy. United States v. Lee, 991 F.2d 343, 347-48 (6th Cir.1993).
 
 
 18
 Sufficient evidence was introduced at trial to convict Garcia of conspiracy. A "deal" existed between Anthony Bustos and Alfredo Garcia. Part of this agreement was that Alfredo Garcia would supply Murco with workers; another part was that Lidia Garcia could work at Murco as long as she wished. Also, approximately thirty percent of Murco's employees hired during 1991 were undocumented aliens. Vans full of Hispanic Murco employees were observed leaving Garcia's home. Of these, forty-seven out of fifty passengers were undocumented aliens. Certain employees were taken to Chicago to obtain false identification documents before they began work at Murco. Finally, Rosario Coronado testified that Garcia stated that he would bring her father into the United States, obtain documents for him, and guarantee work for him at Murco for a fee of $800.00.
 
 
 19
 As there was no manifest miscarriage of justice, we will not review the denial of the Rule 29 motion not properly renewed.
 
 IV.
 
 20
 Bustos appeals the district court's upward adjustment of his sentencing range by four levels to reflect his leadership role in the criminal activity alleged against him and others at Murco under USSG Sec. 3B1.1(a)[1]. He concedes that there was enough evidence produced at trial to award a three-level increase as a manager or supervisor pursuant to USSG Sec. 3B1.1(b). There is some ambiguity in the record regarding what action the district court took concerning this enhancement. Bustos says the court enhanced his range by four levels for his leadership role. That is reflected in the judgment and the presentence report. However, the United States in its brief asserts the court enhanced the range by three levels only. The sentencing transcript shows that although the court said it was adopting the four-level enhancement under Sec. 3B1.1(a), it also said:
 
 
 21
 [I]f this Court in its review of the particular provisions here that are applicable under the sentencing guidelines, 3B1.1(a), that in fact a manager or a supervisor does not inaccurately characterize the role of Mr. Bustos as the jury clearly must have concluded when they returned the guilty verdict in this matter, and that accordingly, the four-point calculation is consistent with the trial testimony, and hence, consistent with the jury verdict that was rendered in this matter.
 
 
 22
 When reviewing the district court's application of the guidelines, we apply the "clearly erroneous" standard to factual findings. United States v. Luster, 889 F.2d 1523, 1525 (6th Cir.1989). Further, due deference must be given to the sentencing court's application of the guidelines to the facts. United States v. Sivils, 960 F.2d 587, 596 (6th Cir.), cert. denied, 113 S.Ct. 130 (1992).
 
 
 23
 The question is whether Bustos was an organizer or leader of the offense. The court should consider the defendant's "exercise of decision making authority," "the recruitment of accomplices" and "the degree of control and authority exercised over others." USSG Sec. 3B1.1, comment. (n. 3) (Nov. 1992). The district court noted that Bustos used his position as personnel manager at Murco to instruct subordinates to falsify INS forms and to hire employees that they knew had false documentation. Both Dalia Sanchez and Ana Garcia testified that they were told by Bustos to accept forged documents at face value. This control over those involved in the hiring process is sufficient to classify Bustos as an organizer or lender.
 
 
 24
 Although there was some ambiguity in the district court's findings, it is clear that Bustos received a four-level enhancement under Sec. 3B1.1. Maybe the court used a poor choice of words when it said that "manager or a supervisor does not inaccurately characterize" Bustos' role. Nevertheless, a remand does not seem to be necessary here. Bustos was sentenced to 16 months under a guideline total offense level of 13 and criminal history category of I, resulting in an imprisonment range of 12-18 months. If the court had lowered the enhancement under Sec. 3B1.1 from a four to a three, as asserted by Bustos, the sentencing range would have dropped to 10-16 months, so his present sentence would still be within the applicable guidelines. Therefore, we decline to remand for sentencing, as any changed calculation in the guidelines would not affect his current sentence.
 
 V.
 
 25
 Garcia also argues that the cross-examination of Lidia Garcia forced her to characterize as mistaken the testimony of other witnesses, including an INS agent, and is therefore reversible error.
 
 
 26
 While there is no precedent on this precise factual situation, there is authority that alleged errors affecting only the rights of a co-defendant may not be raised by other defendants. For example, co-defendants may not challenge Rule 404(b) evidence which was not used against them. See, e.g., United States v. Isabel, 945 F.2d 1193, 1200 (1st Cir.1991).
 
 
 27
 Garcia argues that when Lidia's credibility was undermined, so too was his, even though he did not testify. This is due to the joint defense presented by Lidia and Alfredo that turned almost exclusively on her credibility. This argument is tenuous at best, as it is very difficult for Alfredo, who remained silent, to show that he was prejudiced by any alleged misconduct resulting from the cross-examination of Lidia Garcia. Thus, Garcia has no standing to bring this issue.
 
 
 28
 However, even if this court determines standing exists, the cross-examination does not constitute plain error. Garcia contends that by compelling Lidia Garcia to label each material witness against both herself and her father "mistaken," the prosecutor committed two wrongs. First, he forced her to characterize another witness' testimony as mistaken in order to maintain her innocence and, second, he thereby usurped the function of the jury as the sole judge of witness credibility.
 
 
 29
 At trial, Garcia's counsel failed to object to Lidia Garcia's cross-examination. Accordingly, it may only be reviewed for plain error. Fed.R.Crim.Proc. 52(b). Plain error has been defined as an error which "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Young, 470 U.S. 1, 15 (1985). When a prosecutor's misconduct is the basis for alleging plain error, the alleged misconduct must be viewed in light of the entire record to determine if the proceeding was tainted. United States v. Ebens, 800 F.2d 1422, 1438 (6th Cir.1986).
 
 
 30
 During direct examination Lidia Garcia contradicted virtually all of the testimony of the government's witnesses as it related to her. She also willingly characterized the testimony of government witnesses as "wrong." To support his argument, Garcia relies on United States v. Richter, 826 F.2d 206, 208 (2d Cir.1987), where the court ruled that it was "improper cross-examination" for the prosecutor to ask a witness whether another witness [an FBI agent] "was either mistaken or lying." However, the court stated that it would have been inclined to overlook this conduct were it the sole claim of error. Id. Further, when a witness' testimony squarely contradicts that of other witnesses, the prosecutor may ask the witness whether his testimony necessarily means the testimony of other witnesses is untrue. United States v. Bryant, 770 F.2d 1283, 1291 (5th Cir.1985).
 
 
 31
 When viewed in light of the entire record, the prosecutor's conduct here did not taint the proceeding. The cross-examination of Lidia Garcia indeed undermined her credibility but it did not by default have the same affect on Arturo Garcia's defense. Therefore, this issue does not rise to the level of plain error.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 USSG Sec. 3B1.1 provides in part as follows:
 Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.