NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0408n.06

No. 08-5449

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MAJOR TODD, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:  BOGGS and KETHLEDGE, Circuit Judges; COLLIER, District Judge.[*]

KETHLEDGE, Circuit Judge.  Major Todd's plot to steal over $800,000 worth of ink cartridges crumbled after the Memphis police were tipped off to it.  A federal jury thereafter convicted Todd of two counts of interstate transportation of stolen property.  The district court sentenced Todd to a within-Guidelines sentence of 51 months' imprisonment.  Todd now appeals his conviction and sentence on numerous grounds.  We affirm.

I.

The plot was an inside job.  Willie Hardin worked for a Flextronics assembly plant in Memphis.  Initially, Hardin stole a few items from Flextronics and sold them to Todd (and others)

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

for far below retail value. Hardin then sold Todd 400 stolen, outdated ink cartridges for $200. Later, Todd asked Hardin if he could steal some new cartridges. Hardin obliged in quantities of 15 to 20 at a time.

Then Todd proposed upping the ante. He asked Hardin if they could steal pallets of cartridges. A pallet contains 4,608 cartridges, which would retail for over $101,000. Todd hoped for ten pallets, but Hardin said he would only steal eight. Hardin then recruited Larry Brown, a Flextronics loading-dock worker, to the plot, though Hardin did not tell Brown about Todd. Brown told Hardin that he also would need to recruit Valerie Smith, Flextronics's loading-dock supervisor, to the plot. Hardin thereafter believed Brown had done so.

In fact, however, Brown and Smith reported the plot to Flextronics management, who called the Memphis Police. The case was referred to Sergeant Leo Hampton of the Auto Cargo Task Force, a joint federal-state team tasked with investigating interstate shipments of stolen goods. Hampton asked Flextronics to have Brown and Smith play along with the plot, which they did.

With Brown and Smith supposedly now in the fold, Todd and Hardin turned to securing transportation for the pallets. Todd hired Lawrence Mitchell, a truck driver. Mitchell told Todd that he did not have a trailer; Todd said that they would find one. Right before the theft was executed, Todd told Hardin that he had arranged for a trailer. Mitchell picked up the trailer from a lot in the area; it was later reported stolen.

Todd and Hardin carried out the plot on the morning of August 18, 2005. Hampton and other members of the Auto Cargo Task Force stationed themselves around Flextronics as Mitchell entered

with the truck. Smith, working undercover for the police, directed four pallets to be loaded onto the truck.

After the pallets had been loaded, the truck left Flextronics. Hampton tailed it from Memphis to Byhalia, Mississippi. Along the way, the truck pulled over at a truck stop. There, Hampton saw Mitchell meet with an unidentified person—who he later learned was Todd. Todd's light-colored Ford Taurus then pulled out of the truck stop. Mitchell's truck followed. Hampton tailed the vehicles through rural Byhalia as they turned down a gravel road. Hampton and his officers briefly stopped and decided to spring the trap. When Hampton continued down the gravel road, he found the Taurus and the truck stopped near what he later learned was Todd's mother's home. Hampton saw Todd walking from the Taurus toward the truck. Hampton immediately placed Todd under arrest. Todd voluntarily agreed to return to Memphis. Once there, he waived his *Miranda* rights and confessed to his involvement in the plot.

A federal grand jury thereafter indicted Todd on two counts of interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314—one count for the stolen cartridges, and one count for the stolen trailer. Todd filed a motion to suppress his confession. The district court denied this motion. Thereafter, Todd was convicted on both counts. Under the United States Sentencing Guidelines, Todd faced 51 to 63 months' imprisonment. This range included a two-level leadership enhancement under U.S.S.G. § 3B1.1(c) (2006). The district court sentenced Todd to 51 months' imprisonment. This appeal followed.

II.

A.

Todd argues that the district court wrongly denied his motion to suppress his confession. According to Todd, the police lacked probable cause to arrest him, thus tainting his confession. The district court rejected this argument and denied the motion.

We review de novo the district court's ultimate probable-cause determination, but we uphold its factual findings unless clearly erroneous. *United States v. Gross*, 624 F.3d 309, 314 (6th Cir. 2010). Probable cause to arrest exists where the arresting officer, given the information available to him at the time of arrest, has "a reasonable ground for belief of guilt" under the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Todd concedes that Hampton had probable cause to arrest the driver of the Ford Taurus, but says that Hampton lacked reason to think that Todd was the driver. The district court found, however, that Hampton saw Todd "walking back from the car to the[] [t]ruck" once both vehicles were stopped. That finding was not clearly erroneous. And under the circumstances here—two vehicles pulled over on a remote gravel road—that fact gave Hampton sufficient reason to think that Todd was the driver of the Taurus. That in turn means that Hampton had probable cause to arrest him.

B.

Todd next challenges three aspects of his trial. First, Todd asserts that the district court should not have barred him from presenting certain witnesses. Todd sought to introduce testimony

from other buyers of Hardin's stolen goods that they did not know the goods were stolen, which would contradict Hardin's testimony that they did know. Federal Rule of Evidence 608(b) prohibits "extrinsic evidence of specific instances of conduct intended to attack a witness's character for truthfulness." *United States v. Seymour*, 468 F.3d 378, 387 (6th Cir. 2006). Yet attacking Hardin's general credibility is the exact reason cited by Todd's trial counsel for introducing these witnesses. Given that concession, the district court did not abuse its discretion in disallowing these witnesses and their testimony under Rule 608(b).

But Todd presents an alternative theory: his proposed evidence fits under Rule 608(b)'s supposed impeachment-by-contradiction exception. This exception "permits courts to admit extrinsic evidence that specific testimony is false, because [it is] contradicted by other evidence." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) (internal quotation marks omitted). Although other circuits have recognized the exception under limited circumstances, *see, e.g.*, *id.* at 932–33, this circuit never has. In any event, the exception is inapplicable here. When pressed as to whether Hardin's other buyers knew that the items were stolen, Hardin hedged enough to leave little contradiction with the other witnesses' testimony. Thus the court did not err in refusing to allow them to testify.

Second, Todd argues that the government's cross-examination of him rendered his trial fundamentally unfair. In particular, the Government asked Todd whether other witnesses were lying after his testimony contradicted theirs. Because Todd did not object to these questions below, we review this claim for plain error. *See United States v. Boyd*, — F.3d —, 2011 WL 1304466, at *9 (6th Cir. 2011). There was none here, since the Supreme Court has never ruled on the propriety of

such question, and our circuit has held in two unpublished decisions that this practice is not plain error. *United States v. McCoy*, 72 F. App'x 410, 415 (6th Cir. 2003); *United States v. Bustos*, Nos. 93-1203, -1204, 1994 WL 47785, at *5 (6th Cir. Feb. 15, 1994). So this argument fails.

Third, Todd argues that the jury lacked sufficient evidence to convict him for interstate transportation of the stolen truck trailer. Here, the only disputed element of the crime is whether Todd knew that the trailer was stolen. *See United States v. Monus*, 128 F.3d 376, 384 (6th Cir. 1997). Trial testimony included the following: After Mitchell told Todd that he did not own a trailer, Todd said he would find one. And Todd later told Hardin that he had "arranged" for a trailer. On this evidence, a rational jury could find beyond a reasonable doubt that Todd knew the trailer was stolen. *See, e.g.*, *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

Finally, Todd argues that the district court erroneously applied a two-level leadership enhancement under U.S.S.G. § 3B1.1(c) (2006). According to Todd, the court lacked sufficient evidence that he "controlled" Hardin or Mitchell in carrying out the plot. Control over persons, however, is merely one way the enhancement may apply. It also applies when the defendant "has exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the planning phase of the criminal venture, *or* exercised control or authority over at least one accomplice." *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (emphasis added). Here, the district court found that Todd was the key strategizer in planning the crime: he initially proposed stealing pallets of cartridges, he arranged for a truck driver and stolen trailer to transport the stolen cartridges, and he arranged for the truck to travel from Memphis to Mississippi.

The court also found that Todd recruited Mitchell, the truck driver, to the failed plot. The record supports these findings. The enhancement was proper.

Todd moved this court for leave to file a supplemental pro se brief alleging ineffective assistance of trial counsel, which was granted on August 5, 2009. This court "generally will not review an ineffective assistance of counsel claim on direct appeal, as such claims are more appropriately raised in a post-conviction motion under 42 U.S.C. § 2255 when an adequate record may be developed on the issue." *United States v. McCarty*, 628 F.3d 284, 295 (6th Cir. 2010) (quoting *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999)). Because the ineffectiveness of Todd's counsel is not apparent from the record, further development of the evidentiary record would be necessary before this court could review the merits of that claim. *See id.* at 295–96. For example, Todd asserts that his counsel failed to obtain a copy of the suppression-hearing transcript to use to impeach the government's witnesses, that he did not introduce into evidence tape-recorded conversations between Hardin and Brown, and that he failed to impeach the testimony of Hardin and Hampton. Based on the record on appeal, this panel could not address whether these were strategic choices on counsel's part.

We decline to address the other claims Todd asserts in his pro se brief, as this court generally does not consider pro se claims brought by a defendant who is represented by counsel. *See United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009). Todd's motion to file a pro se supplemental brief discussed only the claim that his trial counsel was ineffective. The other claims he included in the pro se brief fall outside of the scope of his motion.

The district court's judgment is affirmed.