*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0315p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

    *v.*

                    No. 10-5811

ANTHONY E. SCOTT,
                *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20202-001—Jon Phipps McCalla, Chief District Judge.

Decided and Filed: September 10, 2012

Before: MARTIN, MOORE, and COOK, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. Anthony Scott appeals his conviction of sixteen counts of robbery, attempted robbery, and use of a firearm in connection with the robberies and attempted robbery. He argues that evidence of his statements to police should have been suppressed, and that his mother's testimony regarding his statements about the crimes should not have been excluded. For the reasons that follow, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

I.

Scott was apprehended by Memphis, Tennessee, police on May 28, 2008, near the scene of the robbery of an auto parts store. The Memphis police had been investigating a string of robberies similar to the robbery at the auto parts store, and the police believed Scott might have been involved in both the string of robberies and the May 28 robbery. The police took Scott to the Memphis Robbery Bureau, where Detective Tony Taylor read Scott his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and gave Scott an Advice of Rights form. The form included the following *Miranda* warning:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have a right to have a lawyer, either of your own choice, or court appointed, if you are unable to afford one; and to talk to your lawyer before answering any questions; and to have him with you during questioning, if you wish.

Below the warning, the form included two questions and spaces below the questions in which Scott wrote answers to the questions as follows:

> Q: Do you understand each of these rights I've explained to you?
> A: Yes
>
> Q: Having these rights in mind, do you wish to talk to us now?
> A: No

After Scott filled out this form, he said that he did not want to speak with the officers. The officers ceased questioning. Detective Eric Hutchison transported Scott from custody at the Robbery Bureau to Bartlett Jail. Scott testified that, a few minutes before Hutchison transported Scott, Hutchison said, "[w]e're going to take you to another jail until you ready to say something, and we will come back and get you tomorrow and see if you ready then." Hutchison testified that while Scott was entering the transport vehicle, Scott said to Hutchison: "Hey, look, I know I need to talk to y'all, I just can't do it right now, let me get my head together, and I will talk to y'all later." Scott did not testify as to whether he made any statement to Hutchison during the period prior to his being transported or upon entering the vehicle. The next evening, May 29,

Scott was transported from Bartlett Jail back to the Robbery Bureau. Detectives at the Bureau began an interview with him, in which Scott was again presented with the Advice of Rights Form. This time, he answered "yes" to both questions. Scott then made statements to the police, confessing to various robberies, but not to the May 28 robbery. He was returned to Bartlett Jail. On his third day in custody, May 30, police again transported Scott from Bartlett Jail to the Robbery Bureau and presented him with the Advice of Rights Form; he again answered "yes" to both questions and he subsequently confessed to a number of robberies.

Before trial, Scott moved to suppress the confessions he made at the Robbery Bureau. The district court denied the motion. Scott was tried before a jury and convicted of sixteen counts of robbery, attempted robbery, and the use of a firearm in connection with the robberies and attempted robbery.

Scott appeals his conviction, arguing that the district court erred in denying his motion to suppress his statements to the police at the Robbery Bureau. He also argues that the district court erred in excluding testimony from his mother at trial.

II.

"When reviewing a district court's decision on a motion to suppress, this Court reviews the district court's factual findings for clear error, and its legal conclusions de novo." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (citation omitted). "When a district court has denied a motion to suppress, this Court reviews the evidence 'in the light most likely to support the district court's decision.'" *Id.* (citation omitted).

"In *Edwards v. Arizona*, 451 U.S. 477 (1981), [the Supreme Court] held that law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation." *Davis v. United States*, 512 U.S. 452, 454 (1994). "[T]he suspect must unambiguously request counsel . . . . [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. "If an accused makes a statement concerning

the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259-60 (2010) (citations omitted). Bearing these principles in mind, we now address Scott's arguments concerning his motion to suppress.

A.

At the suppression hearing, Scott testified that he invoked his right to counsel on May 28, 2008, the day of his arrest, by verbally stating to Detective Tony Taylor that he wanted a lawyer. Taylor testified at the suppression hearing that Scott never requested a lawyer. The district court found Taylor's testimony as to whether Scott verbally invoked his right to counsel credible. The district court found Scott's testimony on the subject non-credible, and ruled that Scott had not verbally requested a lawyer.

We will reverse the district court only if Scott shows that the district court clearly erred in its credibility determinations. *See Adams*, 583 F.3d at 463. "When a district court has denied a motion to suppress, this Court reviews the evidence in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted).

Scott argues that Taylor's written supplemental report, which does not mention whether Scott requested counsel, compels us to conclude that the district court erred. Scott argues that, "given the great detail with which Taylor documented Mr. Scott's reticence to speak to police," Taylor necessarily would have noted in the report that Scott had not requested counsel. We do not agree. The omission from the report of an event that the author of the report claims did not occur does not lead us to conclude that it was clear error to credit the supplemental report as to the alleged occurrence of this event. Moreover, the district court heard ample testimony from both Scott and Taylor at the suppression hearing. A review of the record reveals that the district court did not clearly err in deciding to credit the testimony of Taylor, and not Scott, on the issue of whether Scott verbally invoked his right to counsel. *See id.* at 464 n.7 ("Because the district court was in the best position to assess credibility, we defer to the court's

determination on this issue."). Because Scott has not proved clear error in the district court's credibility determination, we do not overturn the district court's denial of Scott's motion to suppress on this issue.

B.

Scott next argues that he invoked his right to counsel when he wrote "no" in response to the written question "Having these rights in mind, do you wish to talk to us now?" We find that Scott invoked his right to counsel by this response. According to the language of the question itself, the "no" response is related directly to "these rights," which include the right to have counsel present while answering questions.

"A suspect need not 'speak with the discrimination of an Oxford don,' but must be unambiguous. This means that a suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Tolliver v. Sheets*, 594 F.3d 900, 922 (6th Cir. 2010) (quoting *Davis*, 512 U.S. at 459). Invoking the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991).

Scott's written response of "no" to the question regarding his desire to speak with police "articulate[d] his desire to have counsel present sufficiently clearly." *Davis*, 512 U.S. at 459. We are mindful that, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 452. But here, in light of the wording of the form, we cannot conclude that a reasonable police officer would have thought that Scott was not invoking the right to counsel. The Advice of Rights form identifies several rights, including the right to counsel. The form then references the right to counsel—along with several other enumerated rights—in the written question: "Having these rights in mind, do you wish to talk to us now?" Specifically, among the rights enumerated are the rights "to talk to your lawyer before answering any questions"

and "to have him with you during questioning." Both of these rights involve Scott's access to a lawyer, and both also relate to speaking with police. By requesting a response that bears "these rights in mind," the form elicited a response about Scott's desire to speak with police "now" despite his right to counsel; with this right in mind, Scott indicated he did not wish to speak with the police.

Both parties support their positions by citing similar cases concerning *Miranda* rights form waivers. In *United States v. Brown*, 287 F.3d 965, 970 & n.2 (10th Cir. 2002), an intoxicated defendant responded "yes" to the questions "Keeping your rights in mind, do you wish to answer questions now without a lawyer present?"; "Do you want a lawyer?"; and "Do you want to talk to a lawyer?" The Tenth Circuit held that these responses, which contradicted each other, were not an unambiguous invocation of the right to counsel. *Id.* at 972-73. But *Brown* is not analogous to our case because here, unlike in *Brown*, Scott's responses to the form's questions are not inconsistent.

In *United States v. Johnson*, 400 F.3d 187, 196 (4th Cir. 2005), the district court found that the defendant had invoked both his right to remain silent and his right to counsel when he wrote "no," in response to the question, "Do you want to make a statement at this time without a lawyer?" The Fourth Circuit ruled that the district court erred when it refused to suppress evidence of subsequent statements made by the defendant upon further questioning by police after the defendant had filled out the form as noted. *Id.* We find that Scott's response to the form question at issue here is unambiguous. In fact, it is an even clearer invocation than the response to the form question in *Johnson*. In Scott's case, the phrase "these rights" in the form question refers to *all* of the rights, including the right to counsel, enumerated on the form immediately preceding the question. Even if we apply a more narrow reading in which only those rights related to speaking to police (the activity that is expressly referenced in the form question) are the rights invoked by a "no" answer, we would be compelled to conclude that Scott invoked his right to counsel. As we have noted, among the rights related to speaking to police that are expressly enumerated in Scott's form are the rights

"to talk to your lawyer before answering any questions" and "to have him with you during questioning," both of which involve the right to counsel.

If there is any ambiguity about Scott's right to counsel, it is in the form itself, and not in his invocation of the right. The form used by the Memphis police is far from a model of clarity, and, if interpreted as urged by the United States, its use might result in some suspects waiving their rights to counsel when they do not intend to do so. We agree with the Fourth Circuit, which noted in *Johnson*, 400 F.3d at 197, that:

> Because "we should indulge every reasonable presumption against waiver of fundamental constitutional rights," *Michigan v. Jackson*, 475 U.S. 625, 633 (1986) (internal quotation marks and citation omitted), we cannot interpret an ambiguity caused by the Government to be a waiver of the right that "is indispensable to the protection of the Fifth Amendment privilege," that is, the right to counsel. *Miranda*, 384 U.S. at 469.

As the court in *Johnson* did, "[w]e, too, refuse to fault the defendant for any ambiguities—intentional or otherwise—created by the Government." *Johnson*, 400 F.3d at 196. We hold that Scott invoked his right to counsel.

Though we hold that Scott invoked his right to counsel, based on the facts before us, we are unable to conclude whether, after invoking his right to counsel, Scott later waived that right while in custody. Under *Edwards*, if Scott initiated further discussion with the police, he waived his right to counsel; if he did not initiate discussion, he did not waive his right to counsel and the police were barred from continuing questioning. "[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484. "If the police do subsequently initiate an encounter in the absence of counsel ([with] no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil*, 501 U.S. at 177 (1991). Here, there is conflicting testimony as to who initiated

subsequent discussion of the robberies: the evidence offers differing accounts of whether Scott or Hutchison spoke first and what was said during the period before Hutchison transported Scott to Bartlett Jail. This conflicting testimony, and the lack of a factual finding on the issue, leave us unable to draw a conclusion as to whether Scott or the police initiated a discussion after Scott had first completed the form. Though the district court did find that the police initiated the second interview on May 29, the second day Scott was in custody, because of the conflicting evidence, we cannot determine whether or not Scott waived his right to counsel prior to that interview. If he did, of course, the confessions obtained during that interview are admissible as evidence. If he did not, those confessions, though obtained after Scott executed the May 29 written waiver in which he answered "yes" to both form questions, are "presumed involuntary and therefore inadmissible as substantive evidence at trial." *Id.*

For all of these reasons, we reverse the district court's ruling that Scott did not invoke his right to counsel, and we remand for further factual findings to determine who—Scott or a member of the police—initiated further discussion. Because the factual findings of this remand could determine Scott's coercion claim, *see id.*, we do not reach the merits of his coercion claim.

Usually, we consider whether wrongfully admitted evidence was nonetheless harmless. *See Chapman v. California*, 386 U.S. 18 (1967). But, "[i]n the case of a coerced confession . . . the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." *Arizona v. Fulminate*, 499 U.S. 279, 297 (1991). Because we remand the case to the district court to determine whether, under *Edwards*, Scott's confession was coerced, we "exercise extreme caution" today and do not reach the merits of whether admission of Scott's confession, even if error, was nonetheless harmless; we leave this question to another day, if relevant.

III.

Scott also argues that the district court erred in excluding his mother's testimony regarding whether Scott admitted to her, in front of the police, that he committed the robberies. "In reviewing a trial court's evidentiary determinations, this court reviews de novo the [trial] court's conclusions of law, e.g., the decision that certain evidence constitutes hearsay, and reviews for clear error the court's factual determinations that underpin its legal conclusions." *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005) (internal quotation marks omitted). Scott sought to impeach Detective Hutchison's testimony—that Scott had confessed his role in the robberies to his mother while in the police officers' presence—by eliciting contradictory testimony from his mother. The United States objected to admission of Scott's mother's impeachment testimony, and the district court excluded this testimony as inadmissible hearsay.

"Impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) (internal quotation marks omitted). Impeachment by contradiction is an exception to Federal Rule of Evidence 608(b)'s collateral fact rule, "which generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness." *Id.* We have not recognized the doctrine of impeachment by contradiction, *see, e.g.*, *United States v. Todd*, 431 F. App'x 412, 416 (6th Cir. 2011) ("Although other circuits have recognized the exception under limited circumstances . . . this circuit never has."), and we need not do so today.

Even where impeachment by contradiction is recognized, its availability is limited: a witness may be impeached by contradiction only if "the statements in issue [have] been volunteered on direct examination." *Kincaid-Chauncey*, 556 F.3d at 932. Here, Scott sought to introduce his mother's testimony to contradict trial testimony by Hutchison "regarding whether her son ever admitted to [his mother] in front of detectives that he committed the robberies." As the United States argues, and as Scott appears to concede, the only trial testimony relevant to this issue is Hutchison's statement on direct examination that Scott "wanted to call his mother on the phone and let her know what

he had done." But the United States never elicited testimony from Hutchison stating that Hutchison heard Scott admit to his mother that Scott committed the robberies; the quoted testimony regards Hutchison's recitation of the reason Scott gave for wanting to call his mother, and does not regard the content of Scott's call to his mother. Hutchison never testified to anything regarding the content of Scott's call with his mother, and thus, Hutchison did not testify to any fact that Scott's mother could contradict. Further, any testimony by Scott's mother as to Scott's statement to police concerning the reason he wanted to call her is not based upon her personal knowledge—she was not present when Scott made the statements to which Hutchison testified. *See* Fed. R. Evid. 602. We cannot conclude that the district court abused its discretion in excluding this testimony.

IV.

For these reasons, we **REVERSE** the district court's ruling that Scott did not invoke his right to counsel, and we **REMAND** for further factual findings about whether Scott, having already invoked his right to counsel, subsequently waived that right. We **AFFIRM** the district court's ruling excluding testimony from Scott's mother.