**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0120n.06

Case No. 16-6833

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 08, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DEMETRIUS JOINER, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; SILER and COOK, Circuit Judges.

**SILER, Circuit Judge.** Demetrius Joiner was convicted by a jury of being a felon in possession of a firearm. On appeal, he alleges that the prosecution engaged in misconduct by making improper comments during the questioning of witnesses and closing argument, and violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence. Finding no error, we AFFIRM.

I.

While exercising at the YMCA, Officer John Boe received an alert from his bank that his credit cards were being used. He discovered that his truck had been broken into, and his wallet, credit cards, cell phone, and Glock .45 caliber handgun were stolen. Boe's colleagues on the Chattanooga Police Department, Officers Trent Kilpatrick and Hunter Morgan, were called to

investigate. The officers began by reviewing security camera footage from the YMCA parking lot. However, the camera covering the area where Boe's truck was parked at the time of the burglary was inoperable. According to Morgan, the footage from the other cameras revealed nothing of investigative use to the officers, so they did not obtain a copy.

The officers also reviewed footage from a local Wal-Mart and saw Demetrius Joiner using Boe's credit cards to purchase several items, including an Xbox One, video games, and a television. Joiner drove away in an SUV with a mismatched quarter panel. Later that day, the officers saw a similar vehicle parked at a restaurant. The SUV was registered to a Ms. Joiner, who was listed as deceased in police records. A next-of-kin search returned a result for Joiner, whose photo matched the man using Boe's credit cards in the Wal-Mart surveillance footage. When the officers arrested Joiner inside the restaurant, he had the stolen wallet in his possession.

Officer Morgan advised Joiner of his *Miranda* rights in the restaurant's parking lot, and Joiner eventually admitted to using the stolen credit cards. Morgan testified that Joiner said he had given the handgun to a person named Kam, and that Joiner offered to help the officers retrieve it. With Joiner's permission, Morgan texted Kam using Joiner's phone, but Kam eventually stopped responding to Morgan's messages. Further efforts to retrieve the firearm were unavailing, and the gun, credit cards, and television were never recovered. The officers did, however, find the Xbox and video games in Joiner's bedroom.

Morgan and Kilpatrick brought Joiner to the stationhouse for a more thorough interview. Joiner spoke with the officers for approximately two hours. Both officers testified that Joiner confessed to breaking into Boe's truck, stealing all the items, and giving the gun to Kam to hold. The interview was not recorded.

Joiner's account of the interview is different. He claims he never told the officers that he possessed the firearm. Instead, Joiner testified that he acted as Kam's lookout while Kam broke into Boe's truck. When Kam returned from the truck, he had Boe's wallet. Joiner took the wallet and credit cards and went into Wal-Mart alone because Kam was on the store's no-trespass list. The pair agreed to split the ill-gotten purchases. Shortly before they parted ways, Kam told Joiner he had a gun for sale.

Joiner was indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). His first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. At his second trial, Officers Morgan and Kilpatrick testified for the government, and Joiner testified on his own behalf. The jury found Joiner guilty, and this appeal followed.

## II.

## A.

Joiner first argues that his conviction was tainted by prosecutorial misconduct. Particularly, he claims the prosecution improperly: (1) asked him to comment on the credibility of the government's witnesses; (2) vouched for the credibility of the officers it called as witnesses; (3) told the jury that Joiner lied during his testimony; and (4) shifted the burden by asking why Joiner failed to produce Kam as a witness. We review claims of prosecutorial misconduct de novo when the allegedly improper comments were objected to in the trial court, and for plain error when no objection was made. *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) (citation omitted).

To determine whether prosecutorial misconduct occurred, we employ a two-step analysis. "First, we determine whether the statements were improper. Second, we ask whether the

remarks were so flagrant as to warrant reversal." *Id.* (internal citations omitted). We examine four factors to determine whether improper marks were flagrant: "(1) the degree to which the conduct or remarks tended to mislead the jury or prejudice the defendant; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant." *Id.* (citing *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)).

The first potentially improper comments occurred during the government's cross-examination of Joiner. After establishing that Joiner denied stealing the handgun, and that Joiner heard the officers testify that he confessed to the crime, the prosecutor asked, "So are you saying here to the jury that [the officers] lied on that day[?]" Defense counsel objected, arguing that it was improper for the prosecution to ask Joiner to comment on the officers' credibility. The trial court overruled the objection, and Joiner answered, "Yes." The prosecutor then asked, "Yes or no, do you believe that [the officers] made this up on you?" Joiner again answered, "Yes."

Generally speaking, it is improper for a prosecutor to question a criminal defendant on the credibility of the witnesses against him because "credibility determinations are meant for the jury, not witnesses." *United States v. Dickens*, 438 F. App'x 364, 369-70 (6th Cir. 2011); *see Arnold v. Wilder*, 657 F.3d 353, 367-68 (6th Cir. 2011). We allow such questioning only in limited circumstances, such as when a defendant "open[s] the door by testifying on direct that another witness was lying." *Dickens*, 438 F. App'x at 370 n.2 (citation omitted). That circumstance is not present here. It was therefore improper for the prosecutor to ask Joiner whether he believed the officers testified untruthfully.[1]

---

[1] The United States relies upon several of our unpublished cases that suggest the prosecutor's line of questioning was not improper. *See United States v. Todd*, 431 F. App'x 412, 416 (6th Cir. 2011); *United States v. McCoy*, 72 F. App'x 410, 415 (6th Cir. 2003); *United States*

However, these isolated questions were not flagrant, and therefore do not warrant reversal standing alone. The questions were put before the jury deliberately, and the evidence against Joiner was hardly overwhelming. But the objectionable line of questioning was only a small part of the government's cross-examination of Joiner. Moreover, any prejudice Joiner might have suffered was slight, given that the entire trial was, in essence, a credibility contest between Joiner and the officers.

Joiner next argues the prosecutor improperly vouched for the officers' credibility. During their respective direct examinations, the prosecutor asked Kilpatrick and Morgan whether they knew Joiner, had any bias against him, or had any reason to falsely accuse him of confessing to the burglary. Defense counsel timely objected and was overruled during Kilpatrick's examination, but failed to object when the prosecutor posed the questions to Morgan. During his closing argument, the prosecutor referenced this testimony on several occasions. He reiterated that the officers "didn't know [Joiner], didn't have anything against him, [and] they didn't have any reason to make up anything that was said." The prosecutor also posed hypothetical questions to the jury, asking them, "Who has the motivation to lie?" and "[D]o [the officers] have a reason to lie about [Joiner's confession]?" Defense counsel did not object to the statements made in closing.

Here, the prosecutor did not engage in improper vouching. He did not state that he personally found the officers to be credible, nor did he imply that he knew facts regarding the officers' credibility that were not revealed to the jury—both of which are forbidden. *See Francis*, 170 F.3d at 550 (citing *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992);

---

*v. Bustos*, 16 F.3d 1221, 1994 WL 47785, at *5 (6th Cir. Feb. 15, 1994) (per curiam). However, in those cases, defense counsel failed to timely object when the prosecutor asked the defendant whether government witnesses were lying, so we reviewed for plain error. Here, this particular assignment of error is preserved.

*United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994)). Rather, the prosecutor suggested, based upon the evidence presented at trial, that the officers had no motivation to falsely accuse Joiner. *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005) (A prosecutor may "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."). In *United States v. Walker*, 155 F.3d 180, 188-89 (3d Cir. 1998), our sister circuit held that the use of similar hypothetical questions was not improper because the prosecutor "merely point[ed] to the fact that [the defendant] did not produce any evidence indicating a motive on the part of the law enforcement officers to lie." *Id.* at 188. The same is true here.

Third, Joiner claims the prosecutor made improper statements regarding Joiner's credibility during his closing argument. On several occasions, the prosecutor insinuated, suggested via hypothetical question, or stated outright that Joiner lied to the jury. For instance, the prosecutor said that Joiner will "say one thing one day, another thing another day. And he wants to come here into . . . this room and tell you, the jury, a lie." Later, the prosecutor argued that Joiner will "lie to you once, he'll lie to you again, he'll lie to you about anything to get out of this situation. And I put forth to you that's exactly what happened today." He also said that Joiner "sat here in front of you today and lied to you." Because defense counsel failed to object to these comments, we review for plain error. *Boyd*, 640 F.3d at 669.

"The prosecution may imply that a defendant is lying during its closing argument so long as the prosecutor emphasizes discrepancies between the defendant's testimony and the record." *United States v. Stover*, 474 F.3d 904, 916 (6th Cir. 2007) (citation omitted). However, a prosecutor may not call the defendant a "liar" without reference to the evidence produced at trial. *See Francis*, 170 F.3d at 551-52. Here, at least some of the prosecutor's statements regarding

Joiner's truthfulness were not linked to the evidence. While those statements were improper, they do not rise to the level of flagrancy because "[t]he difference between what the prosecutor actually said—'he is a liar'—and what the prosecutor could have permissibly said, that the evidence suggested that [Joiner's] testimony is not credible, is minimal." *Stover*, 474 F.3d at 916. Further, this is not an "exceptional circumstance[] in which the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (citation omitted). These comments do not warrant reversal under the plain error standard.

Finally, Joiner argues that the prosecutor improperly shifted the burden of proof by implying that Joiner was obligated to produce Kam as a trial witness. During cross-examination, the prosecutor asked Joiner:

> Q: And where is Kam today?
> A: I haven't spoken to him since I was arrested [on] May 30th, 2015.
> Q: But you said at a prior hearing that he would admit to this, correct?
> A: I said it at a prior hearing, yes, yes.
> Q: Okay. And we're here today, and there's no Kam to admit to this, correct?
> A: No Kam to admit to this.

Defense counsel did not object during this line of questioning. Later, during the prosecutor's rebuttal argument, he remarked, "Where's Kam? Where's Kam?" Defense counsel objected, and the trial court instructed the jury to "remember . . . that there's no obligation on the part of the defense to put on a case or present any evidence at all." The court did not specifically sustain or overrule the objection.

It appears that the prosecutor's remarks, and especially the questions on cross-examination, were designed to point out Joiner's prior inconsistent statement that Kam would admit to the burglary. Further, a prosecutor may "comment on a defendant's failure to call witnesses to contradict the government's case" as long as he does not "suggest that the defendant

- 7 -

had the burden of proof or any obligation to produce evidence to prove his innocence." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993) (citation omitted). And any prejudice was cured by the court's immediate reminder to the jury that Joiner had no obligation to produce Kam at trial. *See Henry*, 545 F.3d at 382; *Clark*, 982 F.2d at 968-69.

We are thus left with two instances of improper but non-flagrant comments, one of which is not preserved and does not amount to plain error. The prosecutor should not have asked Joiner whether the officers were lying, and he should not have called Joiner a liar during his closing argument. But these comments, whether standing alone or taken together, do not warrant reversal. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985). In the absence of flagrant impropriety, we reverse only when "(1) the proof of the defendant's guilt is not overwhelming; (2) the defense counsel objected; and (3) the trial court failed to cure the impropriety by failing to admonish the jury." *Francis*, 170 F.3d at 550 (citations omitted). Here, defense counsel failed to object to at least some of the improper comments. Moreover, Joiner admitted being a lookout at the scene of the theft and using the stolen credit cards to purchase items in the store. He also admitted that the gun was taken from the truck by Kam when Joiner was present. We cannot say with fair assurance that the misconduct in Joiner's case was "so pronounced and persistent that it permeated the entire atmosphere of the trial." *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994) (cleaned up).[2]

---

[2] *See United States v. Dowell*, ___ F. App'x ___, 2017 WL 4461035, at *2 (6th Cir. Oct. 6, 2017) (using "cleaned up" parenthetical to remove internal quotation marks, brackets, and

B.

Joiner also claims the government suppressed exculpatory evidence by failing to preserve security camera footage from the YMCA, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, Joiner must prove "(1) that the evidence in question [is] favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). We review Joiner's *Brady* claim de novo. *United States v. Tavera*, 719 F.3d 705, 710 (6th Cir. 2013).

Joiner falters at each step of his *Brady* claim. First, he fails to demonstrate that the missing footage would be favorable to him. It is undisputed that the camera that would have captured the burglary was inoperable on the date of the crime. Officers Morgan and Kilpatrick reviewed the available footage and concluded that it was of no use in their investigation because it showed neither the burglarized truck nor Joiner's SUV. Joiner argues that the absence of his vehicle in the footage is exculpatory. But this argument runs contrary to Joiner's defense. Joiner never claimed that he was not present when the burglary occurred. Instead, he testified that he acted as Kam's lookout while Kam burglarized the truck.

Second, Joiner fails to show that the government suppressed the evidence. Once the officers viewed the footage at the YMCA and determined it contained nothing of investigatory value, they left without requesting or obtaining a copy. At this point in their investigation, the officers had not arrested Joiner or even identified him as a suspect. They were not obligated to preserve evidence that was useless to them simply because an as-yet-unknown defendant might possibly find it useful in the future. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("*Brady*

---

parallel citations in quoted material); Jack Metzler, *Cleaning Up Quotations*, J. App. Prac. & Process (forthcoming 2018) (available at SSRN: https://ssrn.com/abstract=2935374).

obviously does not apply to information that is not wholly within the control of the prosecution.").

Last, Joiner fails to show that he suffered any prejudice. In the *Brady* context, prejudice requires "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Odum*, 878 F.3d 508, 523 (6th Cir. 2017) (citation omitted). As noted above, the absence of Joiner's vehicle in the YMCA footage would not have advanced his theory of the case because he admitted being present during the burglary. Moreover, the officers testified that the footage did not show Joiner's vehicle. Therefore, the jury received the substance of the video Joiner sought to put before it, if only in a different format.

**AFFIRMED**.

**COLE, Chief Judge, concurring in part and dissenting in part.** The jury could not reach a unanimous verdict in Joiner's first trial. The prosecutor secured a conviction in Joiner's second trial after repeatedly calling him a liar and forcing him to characterize the other witnesses' testimony as a lie. There is no question these remarks were improper. In such a close case, I respectfully disagree with the majority that the remarks were not also flagrant.

We consider four factors in evaluating flagrancy: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994). The majority agrees that two of the factors weigh in favor of flagrancy: the remarks were deliberate and the evidence against Joiner was "hardly overwhelming." Maj. Op. 5. We part ways where the majority concludes that the remarks were isolated and did not prejudice Joiner.

The remarks were extensive in context. The majority reaches a different conclusion only by separately parsing the prosecutor's remarks, rather than reviewing them "together and in the context of the entire trial" as our precedent instructs. *United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). Joiner and the two investigating officers were the only witnesses to testify before the jury in a one-day trial. When the prosecutor cornered Joiner into framing the officers' testimony as a lie and then argued throughout rebuttal that Joiner had lied to the jury, he effectively impugned all of the testimony the jury heard.

The remarks were also prejudicial. This is not a case like *Stover*, where a single sentence about lying had "minimal prejudice" amid strong evidence of guilt. *United States v. Stover*, 474 F.3d 904, 916–17 (6th Cir. 2007). This was a credibility contest, where prejudice was "highly probable." *Berger v. United States*, 295 U.S. 78, 88–89 (1935); *see United States v.*

*Bess*, 593 F.2d 749, 753 (6th Cir. 1979).  The only evidence of possession was the investigating officers' testimony about an unrecorded confession.  There was no physical evidence connecting Joiner to the gun, such as fingerprints or DNA collected from the truck.  There were no witnesses to the truck burglary.  There was no surveillance footage of the truck.  And the gun was not recovered from Kam. Given that this evidence did not lead to a conviction in Joiner's first trial, the prosecutor's improper remarks could have made the difference in Joiner's second trial.  At the very least, framing the case as a choice between Joiner's testimony or the officers' was misleading.  Joiner's conviction depended on whether the government proved possession beyond a reasonable doubt, not whether the jury believed he was more likely to lie than the officers.

Even if the remarks were not extensive or prejudicial enough to be flagrant, reversal would still be required.  We reverse a conviction for non-flagrant, improper conduct when: (1) the evidence of guilt is not overwhelming, (2) the defendant's counsel objected, and (3) the district court did not provide curative instructions.  *Carroll*, 26 F.3d at 1390.  The majority takes issue with the second factor because Joiner's counsel objected to some, not all, of the prosecutor's improper conduct.  But we have previously found partial objections sufficient for this test. For example, in *Carroll*, we reversed a defendant's conviction under the non-flagrant test "although one of the prosecutor's worst remarks was not objected to" because defense counsel still objected to two improper remarks.  *Id.* Likewise, in *Francis*, we held that the improper conduct—including calling the defendant a liar—warranted non-flagrant reversal although "defense counsel did not object to all of the improper comments."  170 F.3d at 552. This approach is consistent with the discretion intended for non-flagrant reversal.

With this precedent in mind, I would not rest twenty years of imprisonment on a missed objection.