**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2825
_____

DARIUS MURPHY,
                                        Appellant

v.

ADMINISTRATOR EAST JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-04268)
District Judge:  Hon. Kevin McNulty
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 6, 2021
_____

Before: SHWARTZ, KRAUSE, and FUENTES, <u>Circuit Judges</u>.

(Filed: July 7, 2021)
_____

OPINION[*]
_____


SHWARTZ, <u>Circuit Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Following a jury trial, Darius Murphy was convicted of robbery, felony murder, and other crimes. He asserts that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 based upon an alleged violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963). Because Murphy has not demonstrated that the prosecution was aware of a co-defendant's allegedly exculpatory statement, his due process rights under Brady were not violated and we will therefore affirm.

I

One evening, a man approached Janice Gordon outside her home and asked her for a cigarette lighter. She refused, and the man grabbed her from behind as she walked up the steps to her apartment building. He placed a gun to her neck, and two additional men approached and demanded the keys to the building. She let them into the building and the second-floor apartment where she lived with her boyfriend, Corey Davis, as well as her children and nephews. Two of the men entered Davis's bedroom. Gordon then heard a gunshot, which killed Davis. One of the men screamed, "Where's the money at?" and Gordon gave him her jewelry and cash. App. 379-80. Gordon testified that at least one other man was involved because she could hear a voice yelling downstairs as the perpetrators left her apartment. She later identified Murphy in a photo array as resembling the man who first approached her on the street, but she testified she was not sure it was him.

Following his arrest for another crime, Victor Parker told prosecutors about his role and the roles of others in the Davis robbery and murder. A grand jury thereafter

2

returned an indictment charging Keith Henderson, Michael Ricks, Keith Koonce, Parker, and Murphy with various crimes, including robbery and murder.

Parker pleaded guilty, and Henderson, Ricks, Koonce, and Murphy proceeded to trial. At trial, Parker testified that Henderson planned the robbery. Parker's description of the events largely matched Gordon's, as he explained that: (1) Murphy approached Gordon on the street outside her apartment and grabbed her; (2) he, Murphy, and Koonce entered the apartment: (3) Koonce and Murphy were in the bedroom with Davis when the shot was fired; (4) Koonce ran out after the shooting and Henderson came upstairs to search for money, threaten Gordon, and complete the robbery; and (5) Ricks was the getaway driver. The jury found Murphy guilty of conspiracy to commit robbery, first-degree robbery of Davis and Gordon, felony murder, aggravated manslaughter, making a terroristic threat, aggravated assault, endangering the welfare of a child, unlawful possession of a firearm, and possession of a weapon for an unlawful purpose, but found him not guilty of murder.

At the joint sentencing hearing, Henderson stated that the prosecution "contacted [him] and tried to get [him] to cooperate" and to corroborate Parker's testimony. App. 144. Henderson stated that he "told [the prosecution], [he] told [his] lawyer, that . . . [he] was willing to plead guilty," but "would not testify to the factual basis of what Mr. Parker said" since it differed from "what really happened." App. 144. He then told the trial court that there were "individuals who have been implicated in this [trial] that [didn't] have anything to do with this crime, and there [were] people who have something to do

3

with this crime that [were] never arrested," App. 144, and he indicated that another man who was actually involved and still had the murder weapon "looked similar to Mr. Murphy," App. 145.[1]

The Appellate Division affirmed Murphy's conviction and the New Jersey Supreme Court denied review. State v. Murphy, 744 A.2d 1208 (N.J. 1999) (Table).

Murphy filed a petition for post-conviction relief ("PCR") in the New Jersey Superior Court, arguing, among other things, that the prosecution violated his due process rights by failing to disclose Henderson's allegedly exculpatory statements that Henderson claimed he made during plea negotiations and that his appellate counsel was ineffective for failing to raise this issue on direct appeal.[2]

The PCRA Court denied relief. During the hearing on the petition, the prosecutor and the Court reviewed the plea negotiations. Both the prosecutor and the PCRA Court explained that virtually all plea negotiations occurred on the record and the prosecutor stated that Henderson was unwilling to provide any details about the crime unless he received his preferred plea offer. D. Ct. ECF No. 12-14 at 35-36. The PCR Court echoed that Henderson was unwilling to implicate anyone else. Id. at 37. The prosecutor also stated that she "had no factual statements from any of the defendants." Id. at 37-38. On

---

[1] Murphy was sentenced to thirty years' imprisonment. Henderson was sentenced to life without parole. He died in February 2000.

[2] Murphy also filed a motion for a new trial, claiming that Henderson's statement at the sentencing hearing was newly discovery evidence. He attached certifications from Henderson's mother, brother, and cousin indicating that Henderson told them that his co-defendants, including Murphy, were not involved in the crimes.

appeal, the Appellate Division noted that the PCR Court did not "directly address[]" Murphy's due process argument regarding Henderson's statement, but a new trial was nonetheless not warranted on this issue because Henderson's statements at sentencing were "equivocal and vague," and there was no indication that Henderson would have testified on Murphy's behalf. App. 282-83.[3] It remanded for a hearing on whether Murphy's trial and appellate attorneys were ineffective on other issues.

On remand, the PCR Court denied relief, concluding that trial counsel was not ineffective but did not address appellate counsel's effectiveness. The PCR Court, however, did repeat its recollections about the plea negotiations and Henderson's statements at sentencing, explaining that there was no discussion by Henderson about his co-defendants prior to Henderson's sentencing statement and that the focus of the plea discussions was the amount of time each would face under the various offers conveyed. D. Ct. ECF No. 12-15 at 4-5. The PCR Court then asked counsel if their recollections were consistent with the Court's. Notably, Henderson's counsel stated that he was "as surprised as anyone when Mr. Henderson, at the late date, at sentencing for the first time, as I remember it now . . . tried to alibi every other defendant. . . . I don't remember him ever saying [that] to me . . . ." Id. at 6.

---

[3] Additionally, the Appellate Division concluded that the certifications of Henderson's mother, brother, and cousin contained inadmissible hearsay statements which could not justify a new trial "because Henderson is now deceased and no recognized hearsay exception applies." App. 283.

The Appellate Division affirmed, again addressing only trial counsel's effectiveness on non-Brady issues, and the New Jersey Supreme Court denied review. State v. Ricks, 88 A.3d 191 (N.J. 2014) (Table).

Murphy filed a pro se federal habeas petition arguing, among other things, that the prosecution violated his due process rights under Brady by failing to disclose Henderson's statements, and that his appellate counsel rendered ineffective assistance by failing to raise this argument on direct appeal. The District Court denied relief. As to the Brady claim, the District Court explained that there was no evidence that the statement was disclosed to and suppressed by the prosecution. Additionally, the Court reasoned that the information was available to Murphy because he and Henderson were co-defendants with a joint defense strategy at trial.[4] As to the ineffective assistance claim, the Court found that Murphy's appellate counsel was not ineffective for failing to raise a meritless Brady claim, and that, in any event, Murphy could not demonstrate prejudice. Murphy appealed. We granted a certificate of appealability "as to Murphy's claims that (1) his rights under Brady . . . were violated because the prosecution did not disclose . . .

_____

[4] The state courts' reliance on the admissibility of Henderson's statements to his family, see supra n.3, and the District Court's reliance on a "joint defense" strategy between Murphy and the other defendants, App. 46-47, both misstate the law. "[T]he duty to disclose under Brady is absolute—it does not depend on" whether the evidence was admissible, Dennis v. Sec'y Pa. Dep't of Corr., 834 F.3d 263, 290, 308 (3d Cir. 2016) (en banc), or "defense counsel's actions," id. at 290. On this latter point, "the concept of due diligence plays no role in the Brady analysis," so any information sharing between Murphy and his co-defendants would not relieve the prosecution of its duty to disclose Brady material. Id. at 291 (quotation marks omitted).

6

Henderson's statement that Murphy had not been involved in the crime; and (2) his

appellate counsel performed ineffectively by failing to raise this claim on direct appeal."

App. 7.

II[5]

A

Because the state courts addressed the merits of Murphy's due process claim, our

review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. §§ 2241-2254. AEDPA restricts a federal court's power to grant

a writ of habeas corpus when a state court has already denied the same underlying claim

on the merits, unless the state court's adjudication of that claim "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented" to the state court. 28 U.S.C. § 2254(d)(1)-(2); Blystone v. Horn, 664

F.3d 397, 417 (3d Cir. 2011). We defer to a state court's factual determinations because,

under § 2254(e)(1), such determinations are presumed to be correct, and a habeas

petitioner bears the burden of rebutting this presumption by clear and convincing

---

[5] The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the District Court did not hold a hearing, our review is plenary. Dennis, 834 F.3d at 280.

evidence. 28 U.S.C. § 2254(e)(1); see also Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).

B

To prove a due process violation under Brady, a petitioner must establish three elements. "First, the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching. Second, it must have been suppressed by the State, either willfully or inadvertently. Third, the evidence must have been material such that prejudice resulted from its suppression." Dennis v. Sec'y Pa. Dep't of Corr., 834 F.3d 263, 284-85 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). The "touchstone of materiality is a reasonable probability of a different result." Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quotation marks omitted).

Henderson's statement favored Murphy, in that it could have impeached Parker's testimony. Murphy, however, has offered no evidence that the prosecution was aware of the statement before trial. At sentencing, Henderson informed the court:

> I told them, I told my lawyer, that I didn't want to go to trial with th[ese charges], that I was willing to plead guilty, but I would not testify to the factual basis of what Mr. Parker said but I would testify to the factual basis of what really happened.[6]

---

[6] Henderson also said:

And I even told the Prosecutor's Office that what are they going to do now that you convicted three innocent people, what are they going to do when this guy, who was with us, who still has the weapon, when he gets locked up the same way Mr. Parker got locked up and he comes to the Prosecutor's Office and he want[s] to say make a deal and when he makes this deal, he's going to tell him that he has the murder weapon, he's going to tell them the same

8

App. 144. The Appellate Division concluded that this statement was "equivocal and vague." App. 283. This conclusion does not reflect an unreasonable view of the facts.

Indeed, all of the facts in the record support the conclusion that the prosecution did not have statements from Henderson exculpating his co-defendants. First, in a hearing before the PCR Court, the prosecution represented that they "had no factual statements from any of the defendants charged in the homicide." D. Ct. ECF No. 12-14 at 37-38. Second, Henderson's counsel stated that he was "surprised" when Henderson, for the first time at sentencing, sought to exculpate his co-defendants. D. Ct. ECF No. 12-15 at 6. Third, the PCR Court, which was also the trial court, stated that almost all plea negotiations were on the record and there was no discussion by Henderson about the nature, extent, or participation of his co-defendants. Id. at 5. Based on this evidence, the record demonstrates that the prosecution did not know, and hence could not have suppressed, Henderson's statements. See United States v. Joseph, 996 F.2d 36, 39 (3d Cir. 1993) (explaining that, to demonstrate suppression, we apply an objective standard and "consider whether the prosecutor knew or should have known of the materials"). Accordingly, Murphy cannot establish a Brady violation. Cf. United States v. Tavera,

---

thing that Mr. Parker told them, the things that went on and then when you find that this man looked similar to Mr. Murphy, I'm saying what is the Prosecutor's Office going to do[?] Are they going to then say we made a mistake and then ask that these verdicts be set aside or a new trial be[] granted to these individuals?

App. 144-45.

9

719 F.3d 705, 710-14 (6th Cir. 2013) (finding a <u>Brady</u> violation where the prosecution failed to turn over co-defendant's potentially exculpatory statements made during "two debriefings with . . . [the prosecutor] and agents involved in the sting" conducted "[i]n the week before [the defendant's] trial").  Because Murphy's <u>Brady</u> claim fails, he cannot establish prejudice from his appellate counsel's failure to raise it on direct appeal.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 689-93 (1984).[7]

---

[7] Even if we were to conclude that the Appellate Division did not expressly opine on the merits of Murphy's <u>Brady</u> claim, in the absence of an indication to the contrary, we must presume that the state court adjudicated the claim on the merits.  <u>Bennett v. Superintendent Graterford SCI</u>, 886 F.3d 268, 282 (3d Cir. 2018); <u>see also</u> <u>Johnson v. Williams</u>, 568 U.S. 289, 301 (2013).  As Murphy cannot show that the Appellate Division's resolution of his claim was unreasonable, he cannot prevail.  <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden [under § 2254(d)] still must be met by showing there was no reasonable basis for the state court to deny relief.").  Even assuming the prosecution knew of and suppressed Henderson's pretrial statement, Murphy has not demonstrated materiality because it is not reasonably probable that the information would have yielded "a different result."  <u>Kyles</u>, 514 U.S. at 434 (quotation marks omitted).  First, Henderson's statement conveys that "there are individuals who have been implicated" who played no role and that other wrongdoers were not arrested, App. 144, and that law enforcement may find someone who looks like Murphy.  Parker was cross-examined about who participated in the crime and his motive for testifying.  Henderson's statement at the sentencing hearing that others were the perpetrators would not have changed how the cross-examination would have proceeded.  <u>See, e.g.</u>, <u>Lambert v. Blackwell</u>, 387 F.3d 210, 253 (3d Cir. 2004) (explaining that "[s]uppressed evidence is not material when it merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable" (quotation marks omitted) (quoting <u>United States v. Amiel</u>, 95 F.3d 135, 145 (2d Cir. 1996))).  Second, Gordon corroborated Parker's account, which the jury's verdict shows it credited.  For this additional reason, Murphy has not demonstrated that "there was a reasonable probability of a different result," <u>Kyles</u>, 514 U.S. at 434, had Murphy showed that Henderson made his statement pretrial and had it been disclosed.

10

## III

For these reasons, we will affirm the District Court's order.